**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:20-cv-593-MOC-DCK**

| | |
|---|---|
| JOHN W. THOMAS ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| **GREAT SOUTHERN LIFE** ) | |
| **INSURANCE COMPANY and** ) | |
| **HARVEY W. WATT & CO., INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Great Southern Life Insurance Company ("GSL") and Harvey W. Watt & Company, Inc.'s ("HWW") (collectively, "Defendants") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), claiming that Plaintiff's lawsuit was not timely filed. (Doc. No. 15).

### I. PROCEDURAL BACKGROUND

After four years of receiving monthly insurance payments of $3500.00, Plaintiff John W. Thomas filed this action and claims that he should have received $5000.00 per month starting in April 2016 when the payments began.

Plaintiff filed this lawsuit on August 21, 2020 in North Carolina state court. (Doc. No. 1-1 at 1). GSL removed this action based on diversity on October 27, 2020. Pursuant to North Carolina State Supreme Court Order pertaining to the Covid-19 epidemic, filings that were due

1

pursuant to the statute of limitations ("SOL") or statute of repose between March 16, 2020, and July 31, 2020, were timely if filed before the close of business on July 31, 2020. (Order of the Chief Justice Extending Filing Deadlines 21 May 2020 available at https://www.nccourts.gov/covid-19).[1]

After Defendants filed a motion to dismiss the original Complaint, Plaintiff filed an Amended Complaint on December 22, 2020. (Doc. No. 14). Defendants seek to dismiss Plaintiff's Amended Complaint, claiming that this lawsuit was not timely filed. As detailed below, the Court disagrees and permits Plaintiff's case to survive the motion to dismiss.

## II.    FACTUAL ALLEGATIONS

Plaintiff spent his working career as an aircraft pilot. (Doc. No. 14 at ¶ 6). In February 2005, Plaintiff purchased Pilot Occupational Disability Insurance ("the Policy") from GSL. HWW is the claims administrator for the Policy. HWW acts in this capacity on behalf of GSL and is its agent in this regard. (Id. at ¶ 10).

The Policy provides that "Disability" and "Disabled" "means the inability to perform the material duties of a commercial pilot as a result of any sickness, or accidental bodily injury." (Id. at ¶ 11; Doc. No. 14-1 at 5). In or about October 2015, Plaintiff's doctors diagnosed him with an inoperable brain tumor that prevents him from flying a plane. Because of his brain tumor and inability to fly, Plaintiff initiated a claim for benefits under the Policy

---

[1] "The court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment." Clark v. BASF Salaried Employees' Pension Plan, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004), aff'd, 142 F. App'x 659 (4th Cir. 2005) (internal citations omitted).

with HWW, the claim administrator. (Doc. No. 14 at ¶¶ 12-13).

The amount of benefits available to Plaintiff under the Policy is the monthly benefit amount of $5,000 for 48 months. (Id. at ¶ 14). In April 2016, HWW began issuing benefits to Plaintiff in the amount of $3,500 per month on behalf of GSL. (Id. at ¶¶15-16). Through April or May 2020, HWW continued issuing benefits to Plaintiff in the amount of $3,500 per month on behalf of GSL. (Id.).

At several times during the 48 months that Plaintiff received benefits, Defendants demanded proof of continuing disability from Plaintiff to continue to pay his benefits. (Id. at ¶ 17).

The Policy provides that

> [t]he Benefits will be paid for continuing Disability if the Insured gives the Company proof of the continued Disability and compliance with the Benefit Conditions, as requested by the Company at its expense. Benefits will be paid monthly after the required proof of Disability has been received. *Any balance remaining at the end of the Benefit Period will be paid as soon as possible after receipt of required proof*.

(Id. at ¶19; Doc. No. 14-1 at 6 ("the Policy") (emphasis added)). The Insurance Certificate provides that the "Benefit Period" is 48 months. (Doc. No. 14 at ¶ 20; Policy at 3).

On or about May 11, 2020, HWW notified Plaintiff that Plaintiff's final benefit amount had been paid for a maximum of 48 months and that HWW was closing Plaintiff's disability file. (Doc. No. 14 at ¶ 23; Doc. No. 14-4). However, after providing Plaintiff this notice, Defendants did not pay Plaintiff the "balance remaining at the end of the Benefit Period," i.e., the $1,500 difference between the $3,500 per month payments and the $5,000 per month

3

benefit before closing Plaintiff's disability file. (Doc. No. 14 at ¶ 23).

Plaintiff contends that the Complaint is timely because Defendants did not pay Plaintiff the "balance remaining at the end of the Benefit Period"—which occurred on May 11, 2020. In other words, Plaintiff contends that the statute-of-limitations ("SOL") on all his claims began running on May 11, 2020. Defendants contend that the SOL began to run in April of 2016 when GSL made the first monthly payment of $3500 instead of the agreed to amount of $5000. If Defendants are correct, then all of Plaintiff's claims are time-barred.

The Court holds that the policy language is ambiguous and that a reasonable person would likely understand the plain language of the Policy to mean that any remaining balance owed to Plaintiff at the end of the 48-month Benefit Period would be paid at the end of that period, provided that Plaintiff supplied proof of his continuing disability. (See Doc. No. 14 at ¶ 21).

### III.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp.

4

v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Id.) (quoting Twombly, 550 U.S. at 556). The court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (Id.). However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. (Id. at 679).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996). A complaint that shows that the statute of limitation has run is the "most common" situation where an affirmative defense appears on the face of a pleading. (Id.). (citing 5A Wright & Miller, Federal Practice & Procedure § 1357, at 352 (1990)). So long as all the facts necessary to show the time bar are in the complaint, the court has the authority to dismiss the action at the

5

Rule 12(b)(6) stage. Worrell v. A Woman's View, P.A., No. 518CV178-MOC-DSC, 2019 WL 427336, at *2 (W.D.N.C. Feb. 4, 2019).

  III.  DISCUSSION

  A. Insurance Policy Language

"An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Register v. White, 358 N.C. 691, 695 (2004); Holshouser v. Shaner Hotel Grp. Props. One, 134 N.C. App. 391, 391 (1999) (ambiguity exists in contract where the language is fairly and reasonably susceptible to either of the constructions asserted by the parties). Under North Carolina law, "a contract of insurance should be given that construction which a reasonable person in the position of the insured would have understood it to mean." Grant v. Emmco Ins. Co., 295 N.C. 39, 43 (1978). Furthermore, "if the language used in the policy is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured, since the company prepared the policy and chose the language." Grant, 295 N.C. at 43; Nationwide Mut. Ins. Co. v. Dempsey, 128 N.C. App. 641, 644-45 (1998) ("[T]he rules of construction of insurance contracts require that ambiguities be interpreted in favor of the insured and that exclusions be strictly interpreted); Cowell v. Gaston Cty., 190 N.C. App. 743 (2008) ("In an insurance contract all ambiguous terms and provisions are constructed against the insurer.") (internal citations omitted). Finally, an interpretation of contract language that gives a reasonable meaning to all provisions of a contract will be preferred to one which leaves a portion of the writing useless or superfluous. See Lowder Inc. v. Highway Comm. 26 N.C. App. 622, 639 (1975).

6

### 1. Benefits Section

In the present case, the Benefits section of the Policy provides:

> The Benefit will be paid for continuing Disability if the Insured gives the Company proof of continued Disability and compliance with the Benefit Conditions, as requested by the Company at its expense. Benefits will be paid monthly after the required proof of Disability has been received. *Any balance remaining at the end of the Benefit Period will be paid as soon as possible after receipt of required proof.*

Doc. No. 14-1 at 6 (emphasis added). The plain meaning of this section is unclear, but a reasonable reading is one that reads the provision as literally promising that "any balance" of owed benefits that remain "at the end of the Benefit Period will be paid as soon as possible after receipt of required proof." The phrase "Benefit Period" is expressly defined in the Insurance Certificate as 48 months. (Doc. No. 14-1 at 3). Therefore, the Policy's language can reasonably be read as allowing Defendants to pay Plaintiff any benefits due—including the $1,500 per month that it had underpaid for 48 months—through the end of the Benefit Period. In other words, the Policy can be reasonably read as stating that Defendants were free to pay Plaintiff any remaining benefits owed through April 2020 without violating the Policy language.

Indeed, the Policy language referring to a "balance remaining at the end of the Benefit Period" would be superfluous and have no purpose or meaning if the full amount must be paid each month without exception for every month during the entire Benefit Period. Notably, the provision benefits Defendants by providing them the chance to catch up on any missed benefit payments at any time until the end of the 48-month period without breaching the Policy, thereby preventing Plaintiff, or similarly situated policyholders, from filing suit until the end of the

7

Benefit Period because no breach had yet occurred. Therefore, according to this reasonable reading of the Policy, Defendants were free to pay Plaintiff any remaining benefits owed through April 2020 without violating the Policy language.

However, in May 2020, Defendants sent Plaintiff a letter stating they were closing his file and not providing any further benefits. (Doc. No. 14 at ¶ 23; Doc. No. 14-4). Consequently, Defendants breached the Policy in May 2020 when they refused to pay the remainder of benefits, which were then due.[2] Plaintiff filed suit on August 21, 2020, three months after Defendants breached the Policy.

The statute of limitations for breach of contract under North Carolina law is three years. N.C. GEN. STAT. §1-52(1). The cause of action generally accrues at the time the promise made in the contract is broken. Harrold v. Dowd, 149 N.C. App. 777, 781 (2002). Construing the facts in favor of Plaintiff, the promise made in the insurance contract was broken on May 2020 and Plaintiff brought his claim three months later. Because Plaintiff's breach of contract claim was brought well within three years of the SOL, the breach of contract claim is timely.

### 2. The Contractual Limitations Period

Defendants argue that the Policy's three-year contractual limitations period[3] bars

---

[2] Plaintiff's Complaint does not allege that Defendants breached the Policy in April 2016 or subsequent months by making the payment of $3,500. Rather, the Complaint alleges Defendants breached the Policy by not making all remaining benefit payments by the end of the Benefit Period (May 2020), as required by the Policy. (Doc. No. at ¶¶ 19-23).

[3] It is unclear from the Policy language whether the contractual limitations period applies. The Policy provides that "[a]ny provisions of the Policy that, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date are hereby amended to confirm to the minimum requirements of such statutes." (Doc. No. 14-1 at 10). If the contractual

8

Plaintiff's claims. The Policy provides:

> No action at law or in equity may be brought to recover on the Policy until expiration of 60 days after proof of loss has been filed in accordance with the requirements of the Policy…. No such action may be brought at all unless brought within 3 years from the expiration of the time within which proof of loss is required.

(Doc. No. 14-1 at 9). Defendants did not breach the contract until they failed to pay Plaintiff the "balance remaining at the end of the Benefit Period," which occurred in May 2020 when Defendants affirmatively told Plaintiff they would not pay him the remaining amounts and they were closing his claim. (Doc. No. 14-4 at 2). Plaintiff filed suit on August 21, 2020, within three months of Defendants' breach. Therefore, it appears that Plaintiff's lawsuit is timely even if the alleged Policy contractual limitations period applies.

If Defendants have contracted for a three-year limitations period, they have also contracted for an accrual date that began at the end of the Benefit Period (here, April or May 2020), because under the language of the Policy, Defendants seemingly had the right to pay any remaining benefits through that time. The Policy language providing that Defendants had the right to pay any remaining benefits through the end of the Benefit Period must be read in conjunction with the contractual limitations period, such that the contractual limitations period of three years begins when (and if) Defendants fail to pay any remaining benefits after 48 months. Lowder, Inc., 26 N.C. App. at 639 (holding that an interpretation of contract language that gives

---

limitations period conflicts with the North Carolina statute of limitations by being less favorable to Plaintiff, then the Policy language seems to state that the contractual limitations period will not apply. Being unsure as to which limitations period may apply (North Carolina's or the Policy's) is another reason Defendants' motion is denied.

9

a reasonable meaning to all provisions of a contract will be preferred to one which leaves a portion of the writing useless or superfluous). Making all inferences in favor of Plaintiff—as the Court must do on a 12(b)(6) motion to dismiss—and construing ambiguous terms against Defendants and in favor of Plaintiff, the Court holds that Plaintiff timely filed suit on August 21, 2020, after Defendants failed to pay him remaining benefits that were due in May 2020, well within the three-year contractual limitations period.

Defendants put forward a different reading of the insurance policy's contractual limitations period. According to Defendants, the contractual limitations period makes clear that no legal claims may be brought at all unless "within 3 years of the expiration of the time within which proof of loss is required." The Policy explains when proof of loss is required: "The Insured must provide the Company, through Harvey W. Watt & Co. written proof of loss within 90 days after the date that loss occurred." (Doc. No. 14-1 at 8). According to this reading of the Policy, Plaintiff's proof of loss was due no later than 90 days after Plaintiff began the claims process in October of 2015. Thus, Plaintiff's proof of loss would have been due no later than 90 days thereafter, or January of 2016. As such, the claims period ended three years later in January of 2019. Plaintiff filed the Complaint in August of 2020, 20 months after that January of 2019 deadline. Under this reading, all of Plaintiff's claims are time-barred by the Policy.

Defendants' argument flounders for a few key reasons. First, as noted above, reading the policy in this way would render superfluous the language in the Benefits Section of the Policy allowing Defendants to pay any missing amount at the end of the 48-month benefit period. Second, reading the contractual limitations period as only allowing legal claims within the first

10

three years of when disability proof was first required would allow Defendants to simply stop paying any benefits after 36 months of beginning payments without repercussion. According to Defendants' overly strict reading of the Policy, the only legal claims that could be brought against Defendants must be brought within three years of when proof is required even though the policy lasts for four years. This is patently absurd, as it leaves no legal recourse to hold Defendants accountable for policy violations for a full 25% of the Policy's duration.

Third, the cases cited by Defendants as supporting their interpretation of the contractual limitations period largely deal with factual scenarios where the defendant never paid any benefits, so the breach of contract clearly occurred when the defendant refused to pay anything to the plaintiff claimant. See Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99, 103 (2013) (detailing administrative process with no "proof of claim" accepted and no benefits paid); Hyatt v. Prudential Ins. Co. of Am., No. 1:14-CV-00035-MR, 2014 WL 5530130 at *3 (W.D.N.C. Oct. 31, 2014), aff'd, 633 F. App'x 145 (4th Cir. 2016) (same). In other words, the cases support Defendants reading of the contractual limitations period only to the extent that the contractual limitations period is intended to apply to claims relating to the approval or denial of a claim. So, if Plaintiff had brought a claim for an impermissible denial of his disability claim, then that claim would be barred by the contractual limitations period because he brought the claim well beyond the three years when proof was required for his disability payments to begin. This is simply not the claim that Plaintiff is bringing.

In the present case, throughout the 48-month benefit period, Defendants continued to demand proof of loss, Plaintiff continued to provide it, and Defendants continued to accept

11

Plaintiff's proof. (Doc. No. 14-2 (January 11, 2019 letter accepting Plaintiff's continuing proof of loss through June 19, 2019); Doc. No. 14-3 (March 6, 2019, letter accepting Plaintiff's continuing proof of loss through May 20, 2020)). The contractual limitation provision provides that Plaintiff must file suit "within 3 years from the expiration of the time within which proof of loss is required." Proof of loss was last required on March 6, 2019, and continued benefits through May 20, 2020. Plaintiff filed suit on August 21, 2020, well within three years of either of those dates. Construing the ambiguities of the insurance contract in Plaintiff's favor, Plaintiff met any contractual limitations period.

Finally, the insurance policies in the cases cited by Defendants did not contain an accrual provision providing that the defendant was permitted to pay any remaining benefits through the end of the Benefit Period, as does the Policy in the present case. The courts in those cases therefore could not have found that a cause of action arose when the insurer failed to pay the full benefit amount at the end of the benefit period; they could only find that a cause of action arose when the plan refused to pay any benefits whatsoever or failed to recognize a valid claim.

Regardless of what meaning Defendants attempt to give their own Policy provision, Plaintiff's reading of the ambiguous Policy language is a fair and reasonable reading that gives meaning to all of the Policy's terms. Therefore, the Policy must be construed against Defendants and in favor of Plaintiff. Construing all inferences and facts in favor of Plaintiff, evidence exists that Plaintiff's cause of action is not barred by North Carolina's SOLs or the Policy's contractual limitations period.

### 3. Unfair and Deceptive Trade Practices Act ("UDTPA") Claim

The limitations period for an unfair and deceptive practices claim is four years. N.C. GEN. STAT. § 75–16.2. A cause of action generally accrues and the statute of limitation begins to run as soon as the right to institute and maintain a suit arises. Hunter v. Guardian Life Ins. Co. of Am., 162 N.C. App. 477, 485 (2004). When a UDTPA claim closely resembles a breach of contract, the SOL runs on the date of the breach. Ring Drug Co. v. Carolina Medicorp Enter., 96 N.C. App. 277 (1989), overruled on other grounds in Crossman v. Moore, 341 N.C. 185 (1995). For UDTPA claims based on fraud or misrepresentation, a more lenient standard is used. Those claims accrue "at the time the fraud is discovered or should have been discovered with the exercise of reasonable diligence." Nash v. Motorola Comm'cns & Elecs., Inc., 96 N.C. App. 329, 331 (1989).

As shown above, Plaintiff's cause of action for breach of contract accrued in May 2020, when Defendants failed to pay the remaining portion of the benefits following the expiration of the Benefit Period, as required under Plaintiff's reasonable interpretation of the Policy. Plaintiff's cause of action for UDTPA violations likewise accrued in May 2020 with Defendants' failure to pay the remaining benefits owed to Plaintiff. Plaintiff filed suit on August 21, 2020, within the four-year SOL. Therefore, Defendant's Motion to Dismiss Plaintiff's UDTPA for a violation of the four-year SOL is denied.

### 4. Bad Faith Claim

Plaintiff also alleges that Defendants engaged in bad faith by denying the "full benefits promised under the Policy" in an "unreasonable," "reckless," and "intentional manner." (Doc. No. 14 at ¶¶ 44-46). In North Carolina, the elements of bad faith are (1) refusal to pay after a

13

recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct. Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387 (1985). As this claim arises from the insurance contract, denying full benefits promised under the Policy, it is also subject to the three-year statute of limitations. See Lanier v. State Farm Fire & Cas. Co., 5:07-CV-129, 2009 WL 926914, at **1-5 (W.D.N.C. Mar. 31, 2009) (holding that the SOL for breach of contract and bad faith are the same).

Here, Defendants seek dismissal of Plaintiff's bad faith claim only on the basis that it violates the three-year SOL. As shown above, Plaintiff's cause of action for breach of contract accrued in May 2020, when Defendants failed to pay the remaining portion of the benefits following the expiration of the Benefit Period. Plaintiff's bad faith claim therefore also accrued in May 2020. Plaintiff filed suit on August 21, 2020, within the three-year SOL. As such, Defendants' Motion to Dismiss Plaintiff's bad faith claim is denied.

## IV. CONCLUSION

Based on a reasonable reading of the Policy, Defendants could pay any remaining benefits due to Plaintiff at any time through the end of the Benefit Period, which expired at the earliest in April 2020. When Defendants failed to pay the remaining benefits due in May 2020, Plaintiff filed suit on August 21, 2020, well within all the SOLs asserted by Defendants in an attempt to bar these claims. Construing the Policy language in favor of Plaintiff and construing all factual inferences in favor of Plaintiff, the Court holds that all the claims in Plaintiff's Complaint have been timely filed. In short, Defendants' Motion to Dismiss (Doc. No. 15) is **DENIED**.

14

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Dismiss for Failure to State a Claim, (Doc. No. 15) is **DENIED**.

Signed: April 7, 2021

Max O. Cogburn Jr
United States District Judge